NANNIE O'KEEF, *et al.*, v. OWEN E. SEIP.

1. JUDGMENT; *General·Verdict; Practice.* Where all the issues in a case are presented to the jury and the jury find generally thereon in favor of the plaintiff, and against the defendant; and the court afterward renders a judgment in favor of the plaintiff and against the defendant, in accordance with the special facts as alleged in the plaintiff's petition, *held,* that the judgment is not erroneous, although such special facts are not specifically mentioned in the verdict of the jury.

2. ——— Several questions with respect to mechanics' liens, and in respect to the practice in courts, briefly referred to and decided.

*Error from Atchison District Court.*

ACTION by *Seip,* to recover from *Nannie O'Keef* and her husband $265, and interest thereon, an alleged balance due upon a contract for building a dwelling-house upon certain lots in Atchison belonging to said *Nannie.* The plaintiff had judgment at the November Term 1874. Defendants bring the case here on error.

*A. S. Everest,* and *H. C. Solomon,* for plaintiffs in error:

The petition and exhibits in the case at bar do not state facts sufficient to constitute a cause of action under the mechanic's-lien laws; and if they do not, advantage thereof may be taken by plaintiffs in error at this time; Civil Code, § 90, Gen. Stat. 648. The petition states that the contract

was made with Daniel O'Keef. No authority is alleged for thus binding or incumbering the separate property of Mrs. O'Keef and the homestead of plaintiffs in error; 13 Ohio St. 131. Admitting that by § 9, art. 15 of the state constitution, and under § 1, ch. 38, Gen. Stat., p. 473, that for the payment of obligations contracted for erection of improvements thereon, the homestead is liable therefor, still it must appear that there was an *obligation* incurred or created by the owner of the same. Was Daniel O'Keef a general or special agent of his wife? We contend he could not create such an obligation without distinct and special written delegation and authority. It would seem that one of the main objects in protecting the homestead from alienation without the joint consent of husband and wife, is to guard her not only against the force, but against the blandishments of the husband; not only against his power, but against her own weakness. It is not alleged that any note or memorandum of the claimed contract was ever made, signed by Mrs. O'Keef, or by any other person thereunto, by her *lawfully* authorized. (Statute of Frauds, §§ 5 and 6, Gen. Stat. 505.) Is there any such contract set forth as would be binding on the land of Mrs. O'Keef? 13 Metcalf, 149; 3 Dutcher, 239. By § 7 of laws of 1872, p. 294, a person under contract with the owner of any tract of land, his agent or trustee, or with the husband or wife of such owner, who has performed labor or furnished material for erecting any building, shall have a lien on the premises for the amount due therefor. By § 3 of said act, any person claiming such lien shall file in the office of the clerk of the district court of the county in which the land is situate, a statement setting forth the amount claimed and the items thereof, the *name of the owner*, the name of the contractor, name of claimant, and a description of the property subject to the lien, verified by affidavit, and this statement *must* be filed within four months after the completion of the building. The clerk of said court shall *immediately* enter a minute of the same in a book for that purpose, to be called the "mechanic's lien book." It appears by exhibit

attached to petition that such statement was not filed within the time required by said § 3; 7 Abb. Pr. (N. S.) 72; 1 Cal. 183; 35 N. Y. 94; 2 Wis. 73, 224; 26 Wis. 661; 34 Mo. 150; 45 Mo. 312. Said statement and each item thereof is on an account and claim against *both* the plaintiffs in error, and contains no item or claim for interest. The affidavit states that the contract was made with Daniel O'Keef *as agent* for Nannie, to build a house on the lot in question, and that she was the owner. The petition alleges that "said *defendants* (plaintiffs in error) were to pay plaintiff (defendant in error) the sum of $1,265" for building said house, and that "said *defendants* have paid upon said contract the sum of $1,000, and that there is still due from said *defendants* under said contract the sum of $265;" that "plaintiff duly filed notice of lien, specifying the defendants as the persons against whom the claim was made, and as the *owners* of said premises." The statement claimed to be filed was not sufficient; it merely shows the balance due; 45 Mo. 573; 53 Mo. 423. The petition does not allege that the contract was in writing; 33 N. J., (Law,) 202; 2 E. D. Smith, 662; 67 Penn. St. 453. If not averred to be in writing, how could *twelve* per cent. interest be claimed? The petition does not allege that the statement claimed to have been filed was "verified by affidavit." This defect is not cured by annexing to the petition as an exhibit a copy of the statement: 24 Wis. 563. And the pretended verification to said statement is wholly insufficient; 3 E. D. Smith, 662. Proceedings to impose and enforce mechanics' liens have no foundation in common law. Every fact essential to jurisdiction should appear upon the record, and want of such in petition would not be cured by admissions in the answer; 1 E. D. Smith, 661; 2 id. 556; 3 id. 632; 27 Mich. 456. The statute declares the conditions on which a lien will arise, and the appearance of those conditions is indispensable to an assertion of a lien. Such lien is exclusively a creature of the statute, deriving its existence only from positive enactment, and does not exist unless the party brings himself within its provisions and shows a sub-

stantial compliance with all its requirements: 2 G. Greene, (Iowa) 508; 35 N. Y. 94; 43 Cal. 515.   There is no allegation that the lien notice was ever entered by the clerk of the court in the "mechanic's lien book;" and if entered elsewhere it would be a nullity; 39 Ind. 201.   This is necessary to allege and prove: 21 Ark. 186.

The court erred in setting said case for trial at the time it was set and under the circumstances disclosed by the record. The law provides that the clerk shall make out a trial docket at least twelve days before the first day of each term, and actions shall be set for particular days: Laws of 1870, § 8, ch. 87.   If this had been done no injustice would have incurred.   The clerk and not the court should set the cases before the term.   It was also error to impannel the jury, and proceed with the trial, under the circumstances disclosed by the record.

The court erred in not permitting the attorney for the plaintiff in error to present and argue the case to the jury. The court evidently must have considered the trial as a judgment by default; but this was error.   Answer had been filed and never withdrawn.   Evidently the attorney for plaintiff in error had the right to address the jury upon the sufficiency and weight of evidence, the question of damages and all the matters and issues involved in the case.   It is not the policy of our law to exclude a party from a hearing, especially in cases where a party has a right to trial by jury on *any* question.   Can a court arbitrarily thus trammel a constitutional right?   If in the case at bar, then in any case.   It would seem that this right was recognized by subdivision 6 of § 1, ch. 162 of laws 1872, page 329; 25 Ga. 85; 2 Gra. & Wat. New Trials, ch. 9; 2 Bibb, (Ky.) 76; 11 Penn. St. 399.

The court erred in directing the jury to find a verdict against plaintiffs in error for the sum of $299.60, and in directing one of the jurors to sign a prepared verdict as foreman.   The answer of defendants stating that plaintiff had no lien on the premises, tendered an issue of fact requiring

·proof that notice of lien was made and filed within the time allowed.

. Said verdict and said judgment are inconsistent, not sustained by evidence, and contrary to law. There was no proof that any statement of the lien was ever made or filed within the time provided by law; 1 Daly ( N. Y.) 61; no proof that the clerk ever entered a minute of the statement in the "mechanic's lien book;" 21 Ark. 186.

We contend that the facts and circumstances disclosed in the record established a case of excusable neglect; 29 Wis. 688; 13 Wis. 482; 15 Wis. 355; 19 Wis. 233; 41 Cal. 626; 31 Iowa, 284, 481. Does not the record disclose such "accident or surprise, which ordinary prudence could not have guarded against?"

The court erred in ordering and directing the clerk to enter any such judgment as the one disclosed by the record herein. The verdict as prepared and directed by the court was a general one for the sum of $299.60 against both of the plaintiffs in error; and by what rule of law or theory of judicial surgery the court dissected or separated the same, and directed such a judgment, we are at a loss to comprehend. We have searched in vain for precedent, and can but say that the judgment is unwarranted, without precedent, and could not have possibly been entered upon a general verdict. How the *court* found, and not the *jury*, the issuable facts in the case at bar, is to us a matter of legal curiosity. The *court*, and not the jury, finding that "The proper proceedings were had to obtain the benefit of the mechanic's lien on the premises;" that the amount of the same was $283; then subtracting this amount from the general verdict, calling the remainder extra work without any lien — severing the vital parts and still leaving life! It was irregular for the trial judge to find additional facts upon which, together with the general verdict of the jury, such a judgment could have been entered: 58 N. Y. 469.

How could the court below tell how much of the general verdict was a lien, and how much was not? 1 Cal. 183, 186.

The opinion of the court was delivered by

VALENTINE, J.: The plaintiffs in error make the following statement of the case, to-wit:

"Owen E. Seip, defendant in error, brought this action against the plaintiffs in error *jointly*, alleging in his petition that he entered into a contract on August 1st 1873 with said Daniel O'Keef as agent of said Nannie to furnish materials and construct a building for her on a certain lot in the city of Atchison, for which plaintiffs in error were to pay defendant in error the sum of $1,265 upon completion of the same; that said building was completed on November 16th 1873; that there has been paid to defendant in error thereon the sum of $1,000, and there is due the sum of $265, with interest thereon from said November 16th 1873, at *twelve* per centum per annum; also describing the premises upon which said building was erected; and alleging that, at the time the contract was entered into and the building constructed and notice of lien filed, the premises were the property of said Nannie, and were occupied by plaintiffs in error as a homestead; that on 13th March 1874, said Seip filed with the clerk of the district court a notice of a lien on said premises for the said indebtedness, specifying plaintiffs in error as the persons against whom the claim was made, and that they were the owners of said premises. A copy of the notice of lien was attached to the petition *as a part thereof*. And as another cause of action, there is a claim in the petition for extra work and material made against plaintiffs in error to the amount of $15, which it is alleged they promised to pay; but this amount, it is alleged, was by neglect of Seip not included in his notice of lien. In the petition, judgment is prayed against both of plaintiffs in error for $280, with interest thereon at *twelve* per centum per annum from November 16th 1873, and that the sum of $265 be declared a first lien on said premises, and that the same be sold to pay said lien and costs of action. To this petition answer was filed, stating in substance that the building was not completed within the time nor according to contract, and was not completed at the date of answer, and was not completed on November 16th 1873; that by the terms of the contract the price agreed upon for the construction of the building was $1,250; the building was to be completed according to certain plans and specifications, and to the satisfaction of the

architect, and was to be completed within sixty days from August 1st 1873; the payments were to be $500 in advance, $500 upon the completion of the work, and $250 in eight months after the building was completed; that the first sum was paid in advance by said Nannie O'Keef, and that at the request of Seip she also paid the further sum of $527 before the completion of the building. The answer denies the claim for extra work, and also denies all indebtedness to Seip, and claims damages by reason of non-compliance with the terms of the building contract, in the sum of $300. The answer prays that the pretended lien be declared of no force or effect, and as utterly void, and for judgment for interest on money paid before due, and for damages. To this answer a reply was filed, in effect a general denial of the answer.

"The case was at issue, and upon the trial-docket at November term 1874, of said district court; but up to December 1st had not been called or set for trial for any particular day; but about four o'clock P.M. of said last-named day, the case was peremptorily set for trial December 3d, at nine o'clock A.M. Before this time the court had been for some two weeks continually engaged in one case; and the court had announced publicly to the bar, and to suitors generally, at different times, that the next case to be called and tried after the one on trial would be an important criminal case which had before been tried in this court, and occupied about two weeks' time. This criminal case was by consent continued, and the case at bar was then called and set for trial *by the court*. On the morning of December 3d, when the case at bar was called for trial, the attorney for plaintiffs in error stated to the court that he was unable to go to trial, and that plaintiffs in error were unable to present their defense, owing to the fact that said case was set in their absence, and that they were then out of the county and state: that said attorney, on first receiving notice that the case at bar was set for trial had filed precipe for witness in their behalf; that subpœnas had been issued, but not returned served, although placed in the hands of the proper officers for service; that said attorney had telegraphed to his clients, who were in St. Joseph, Mo., but no reply had been received up to such time; that witnesses for his clients had not appeared, and said attorney requested a short delay; but the court called said case and immediately impanneled a jury, and then waited about two hours. Seip introduced his testimony, which consisted in producing himself as a witness, and one Henry Luth. All the evidence is contained in the

10—17 KAS.

record. *After the evidence was closed,* said attorney again stated to the court that his clients had not yet arrived, but were expected; that the process which had been issued for their witnesses had not yet been returned, nor had such witnesses been in court, but were expected. The case was held open about two hours.

"When the said attorney got up to present and argue the case to the jury, the court stated that no argument *was necessary,* and refused to permit any argument whatever, but without any argument the court directed the jury to find a verdict in favor of the plaintiff (Seip) against both defendants for the sum of $299.60, and directed the attorney for Seip to prepare a verdict to be signed by one of the jury, which was then written out by said attorney. Said verdict is in the record. The court then handed the same to one of said jury, and directed him to sign the same as foreman, which was done without the jury retiring. This verdict was signed and received by the court, and forms the basis of the judgment rendered herein. A motion for new trial was filed, and supported by affidavits. The affidavit of D. C. O'Keef showed, that at the time the case at bar was set for trial he was in the city of St. Joseph, Mo., where he had been called on urgent and important business; that the day he started away it was announced by the court that the case of The State of Kansas v. Smith would be tried, and he was informed by his attorney and the attorneys in said criminal case that the Smith case would certainly be tried, and would follow the case then on trial, and that the said criminal case would take at least one week in the trial thereof; that on these statements he left for St. Joseph, and was not in Atchison when the case at bar was set for trial; that he did not receive the telegram sent by his attorney; and he stated that there was a good and valid defense to whole of the said claim: that the affiant never incurred any obligation with said defendant in error. The affidavit of Nannie O'Keef, stated in substance, that she never held any conversation with Seip (since he stopped work on the building in question) with regard to the contract, nor did she at any time acknowledge that she was indebted to him, and was never notified by him that the building was claimed to be finished until July 15th 1874; that Seip abandoned the contract about October 15th 1873; that after July 15th 1874, he did some work on the contract; that she never received said building as finished, and same has never been

finished. The affidavit of Seip was also filed in opposition to the motion for new trial. The counter affidavit of D. C. O'Keef was also filed, stating in substance that he was not in the court-room when the case at bar was set for trial, but was in St. Joseph, Mo.; that he never at any time told defendant in error that he would consent to have the same taken up and tried on the day the same was tried, and denying particularly the affidavit of defendant in error; also showing that his absence was unavoidable.

"The motion for new trial was presented, and all of said affidavits read and used on the hearing thereof. The court overruled the motion for a new trial, and ordered, judgment to be entered in favor of Seip, and directed the clerk of said court to enter in the record of said court, following the entry of said verdict, a statement or finding —

"That the court further finds that the proper proceedings were had to obtain the benefit of the mechanic's-lien law for the amount due under the contract sued on, and that the same was secured by a mechanic's lien on said lot 14 in block 93. * * *

"Thereupon it is considered and adjudged by the court here, that the plaintiff, Owen E. Seip, have and recover of and from the said Nannie O'Keef as well the said sum of $283.50, and that the said lot 14, block 93, Old Atchison, in the county of Atchison, stand charged with the payment, as also his costs, and that he have execution hereof.

"And the court further finds that included in the amount found by the jury, to-wit, $299.60, there is the sum of $15 taken in consideration by said jury that was for extra work and materials furnished by said plaintiff to said defendants, which was not in said contract, and on which no mechanic's lien vested. It is therefore considered and adjudged by the court here, that the said plaintiff have and recover of and from the defendant Nannie O'Keef, as well the said sum of $15 so as aforesaid found due, and deducted from the sum total of the verdict of the jury, and that he have hereby execution for the same.

"And the court further finds that this action is founded on a contract for the building of a certain brick dwelling-house situate on lot 14 in block 93 in the city and county of Atchison, state of Kansas, and that the amount due to plaintiffs from said *defendants* for the erection of said building is the sum of $283.50, and the same is secured by.mechanic's lien." [Here follows an order, that if said sum of $283.50 remain unpaid for sixty days, an order issue for the sale of said premises.] "And it is further ordered. and decreed that all equity of redemption of the said Nannie O'Keef and Daniel O'Keef, all right of dower of the said Nannie O'Keef.of, in and to the aforesaid premises be and the same is hereby forever barred and foreclosed from and after said sale."

The foregoing is taken from the brief of counsel for plaintiff in error. All the issues in this case seem to have been submitted to the jury; and the jury seem to have found generally upon all such issues, in favor of the plaintiff below, and against the defendants below. Their verdict is as fol-

lows: "We the jury duly impanneled, tried, and sworn in the above entitled cause, do, upon our oaths, find the issues for the plaintiff, and assess his damages at two hundred and ninety-nine and 66-100 dollars." This $299.66 is evidently the $265.00 claimed by the plaintiff for labor and material under the contract, the $15.00 claimed for extra work and material, and $19.66 interest on said sums, at seven per cent. per annum for one year and a few days; for this is just what the plaintiff was entitled to recover under his petition if all the allegations thereof were true. Upon the foregoing verdict it was competent for the court below to render whatever judgment the petition would sustain. And we think the petition will sustain just such a judgment as was actually rendered. Where the jury by their general verdict find everything in favor of the plaintiff, and neither party has asked that they shall make any special findings, the court may properly render judgment on the verdict, in accordance with the special facts as alleged in the plaintiff's petition, although such special facts are not specifically mentioned in the verdict.

That the petition would sustain a personal judgment in favor of the plaintiff below and against Nannie O'Keef for the amount found by the jury, we think there is no room to question. Whether it would sustain a personal judgment in favor of the plaintiff below and against Daniel C. O'Keef for any amount, we need not determine, for no such judgment was rendered. Whether it will sustain the judgment for the sale of the house and lot, and for applying the proceeds thereof in payment of the money judgment, is perhaps the only question that we need to consider in this connection. The determination of this question depends wholly upon the sufficiency of the allegations of the petition concerning the mechanic's lien. The petition shows that the house was built upon contract with Daniel C. O'Keef, as agent for Nannie O'Keef, who owned the lot upon which the house was built; that the plaintiff was to receive for building said house $1,265; that he did receive $1,000 of that amount;

that the balance thereof, to-wit, $265, became due November 16th 1873, and still remains due and unpaid; that the house was completed November 16th 1873, and that the notice of lien was duly filed March 13th 1874. The notice of lien shows substantially the same things, except, that while the notice (or rather the statement) was sworn to before the clerk of the district court on March 13th 1874, the same appears from the copy brought to this court, to have been filed with the clerk on March 18th 1874. The objections made to the allegations of the petition concerning the lien, we think are not sufficient; and being made for the first time in this court we think they are wholly insufficient to authorize a reversal of the judgment.

In answer to the various objections made by plaintiff in error, and the various questions raised by them, we would reply briefly as follows: Whatever is done by an agent is done by the principal. It was not necessary that the contract should have been made in writing. "The items" of the plaintiff's claim are set forth both in the petition, and in the notice of lien, "as nearly as practicable." Interest is claimed both in the petition and in the notice of lien. The petition does state that said notice "was duly verified," and the notice itself shows that it was, even if the clerk had failed (without the fault of the party filing the notice of lien) to "enter a minute of the same" in the "mechanic's lien book." Such failure would not invalidate the lien as between the original parties. But still we do not think that this question is properly in the case. The plaintiff alleged the due filing of the notice of lien; the defendants did not deny the same, but, on the contrary, substantially by the statements in their answer admitted the same. The verdict of the jury was substantially the only verdict that they could have rendered under the pleadings and the evidence. They might have made special findings upon particular issues, but still their verdict would and should have been substantially the same as it was. There was therefore no substantial error in the court instructing the jury to find as

it did. No argument of counsel could or should have changed the verdict in any substantial particular. The evidence was all in favor of the plaintiff, and was amply sufficient to prove every allegation of the petition put in issue by the answer. And therefore we do not think that the court erred in refusing to allow any argument to be made to the jury. The matter rested in the sound discretion of the court below, and we do not think that the court abused its discretion.

We do not think that the court erred or abused its discretion in setting the case for trial. The substantial portion of the judgment was against Nannie O'Keef alone, and there is nothing to show why she was not amply prepared for trial, or why she could not be personally present at the trial. And one of the affidavits read on the motion for a new trial states "that the said defendant D. C. O'Keef was in the court-room on the forenoon of the day upon which this cause was set for trial, and requested that said cause be set at the time at which it was set." There was no personal judgment for any amount rendered against Daniel C. O'Keef and he did not own the house or lot ordered to be sold.

The judgment of the court below will be affirmed.

All the Justices concurring.